HORACE C. SILSBY, WASHBURN RACE, ABEL DOWNS, HENRY HERRION, AND CHARLES D. THOMPSON, v. ELISHA FOOTE.

Upon a trial in New York, a juror became ill, and was discharged before any evidence was given, and before the plaintiffs' counsel had concluded his opening address. The court ordered another juror to be sworn, and proceeded with the trial. The defendant cannot object to this. It is the practice in New York, and the Circuit Court had a right to follow it.

The court having erroneously refused to allow the plaintiff to offer a paper in evi· dence as a disclaimer of part of a patent, afterwards refused to allow the defendants to offer the same paper in evidence for the purpose of prejudicing the plaintiffs' ·rights. This last refusal was correct. The reason given was erroneous, but this is not a sufficient cause for reversing the judgment.

The courts of the United States have not the power to order a non-suit against the wishes of the plaintiff.

Under a·notice given by the defendant, that the invention claimed by the plaintiff was described in Ure's Dictionary of Arts, Manufactures and Mines, and had been used by Andrew Ure, of London, it was not competent to give in evidence a very large· book. The place in the book should have been specified.

Nor, under the notice, was the book competent evidence that Andrew Ure, of London, had a prior knowledge of the thing patented. The notice does not state the place where the same was used.

One of the specifications of the patent being for a combination of certain parts of mechanism necessary to produce the desired result, it was proper for the court to instruct the jury that the defendants had not infringed the patent, unless they had used all the parts embraced in the plaintiffs' combination; and the jury were to find what those parts were, and whether the defendants had used them.

When a claim does not point out and designate the particular elements which compose a combination, but only declares, as it properly may, that the combination is made up of so much of the described machinery as effects a particular result, it is a question of fact which of the described parts are essential to produce that result, and to this extent, not the construction of the claim, strictly speaking, but the application of the claim, should be left to the jury.

This case was brought up, by writ of error, from the Circuit Court of the United States for the Northern District of New York.

The facts are stated in the opinion of the court.

It was argued by *Mr. Seward,* for the plaintiffs in error, and by *Mr. Foote,* in proper person, for the defendant in error.

Mr. Justice CURTIS delivered the opinion of the court.

This is an action on the case for the violation of a patent-right granted to the defendant in error on the 26th day of May, 1842, for "a new and useful improvement in regulating the draft of stoves." On the trial in the Circuit Court for the Northern District of New York, the defendants took exceptions to the rulings of the District Judge, who presided at the trial, and have brought the case here by a writ of error.

The first exception shows the following· facts: After the counsel for the plaintiff had begun his opening address to the· jury, a juror became ill, applied to the court to be discharged, and was discharged from the panel on account of physical inability to sit on the residue of the trial. Thereupon the court ordered another juror to be drawn and sworn, and the panel being thus full, the trial proceeded, and the plaintiffs' counsel concluded his address. The plaintiff assented to this proceeding: the defendant objected, and excepted to the order of the court.

We think it was not erroneous for the presiding Judge to treat the physical inability of the juror as simply creating a vacancy on the panel, and proceeding to fill it in the usual way by hav-

ing a twelfth juror drawn and sworn. We understand it to have been the practice of the courts of the State of New York so to treat such a withdrawal of a juror, when the presiding Judge in his discretion has thought proper to do so, and under the act of July 20, 1840, (5 Stat. at Large, 394,) the Circuit Court might properly conform to that practice. Of course it must be confined to cases like the present, in which it is apparent the party objecting received no injury. The defendant cannot be supposed to have been prejudiced by the failure of the twelfth juror to hear a part of the opening argument for the plaintiff, no evidence having been given, and he did not make known to the court that he desired to attempt to exercise any right of challenge of the other eleven jurors, to which he might have been restored if any cause existed, and the panel had been treated as broken up. Rex v. Edwards, 4 Taunt. 309 ; Green v. Norville, 3 Hill, (S. C.) 262. In such a case we think it rested in the discretion of the court whether the withdrawal of a juror should be treated simply as occasioning a vacancy on a still existing panel, or as breaking up the panel altogether, and it being a matter of discretion, no error could be assigned upon it, even if there were reason to believe, what in this case there is not, that the discretion was not wisely exercised.

The next exception was to the refusal of the Judge to allow the defendant to put in evidence to the jury an indorsement on the original letters-patent. The plaintiff had previously offered in evidence a duly certified copy of the following disclaimer :

To the Commissioner of Patents, the petition of Elisha Foote, of Seneca Falls, in the county of Seneca, and State of New York, respectfully represents :

That your petitioner obtained letters-patent of the United States for an improvement in regulating the draught of stoves, which letters-patent are dated on the 26th day of May, 1842. That he has reason to believe that, through inadvertence and mistake, the claim made in the specification of said letters-patent, in the following words, to wit: "What I claim as my invention and desire to secure by letters-patent, is the application of the expansive and contracting power of a metallic rod, by different degrees of heat, to open and close a damper which governs the admission of air into a stove, or other structure in which it may be used, by which a more perfect control over the heat is obtained than can be by a damper in the flue," is too broad, including that of which your petitioner was not the first inventor.

Your petitioner, therefore, hereby enters his disclaimer to so much of said claim as extends the application of the expansive and contracting power of a metallic rod, by different degrees of

heat, to any other use or purpose than that of regulating the heat of a stove, in which such rod shall be acted upon directly by the heat of the stove or the fire which it contains; such disclaimer is to operate to the extent of the interest in said letters-patent vested in your petitioner, who has paid ten dollars into the treasury of the United States, agreeably to the act of Congress in that case made and provided. ELISHA FOOTE.

Witnesses — Morris Newton, Edwin L. Baltink.

The defendants objected upon the ground that the instrument did not state "the extent of his interest in such patent." 5 Stat. at Large, 193, sec. 7. The court sustained the objection, and refused to permit the instrument to be read by the plaintiff as a disclaimer. At a subsequent stage of the trial the defendant offered to read to the jury a copy of this instrument indorsed on the original letters-patent, not as a disclaimer under the act of Congress above referred to, but as a confession by the plaintiff that he was not the original and first inventor of a part of the thing patented. The plaintiff objected, because the indorsement on the letters-patent was not in his handwriting, nor signed by him, and the defendants had already caused a duly certified copy of the same instrument to be rejected. The court sustained the objection.

We are of opinion the court erred in not allowing the plaintiff to put this instrument in evidence as a disclaimer, under the 7th section of the act of March 3, 1837. 5 Stat. at Large, 193. This section authorizes not only the patentee, but his executors, administrators, and assigns, whether of the whole or of a sectional interest in the patent, to make disclaimer, "stating therein the extent of his interest in such patent." This instrument states that the plaintiff was himself the patentee, and having thus shown a grant to himself of the whole interest, it is silent respecting a transfer of any part of it. The fair implication is that he still owns the whole; and this implication is sufficient without an express declaration that he had parted with no interest. It has been argued that the words "such disclaimer is to operate to the extent of the interest vested in your petitioner," imply that he had not the whole title. But the interest previously described as vested in him was the entire title as patentee, and this reference to that interest, accompanied by a declaration that the disclaimer was intended to operate upon it to its whole extent, strengthens, rather than weakens the implication that he owned the whole patent. This being so, it follows, that when the defendants offered to put a copy of the instrument in evidence, not as a disclaimer, but as a confession of the defendant, to prejudice his rights, it was properly rejected. It is true the rejection of the evidence was placed on a different

19*

ground by.the Judge below. But.if the defendants were not deprived of any right by the rejection of the evidence, it is not cause for reversing the judgment that an erroneous reason .was given for rejecting it; and they were not deprived of any right, if the paper was not legal evidence upon the particular point for which alone it was offered, or if its reception, accompanied by proper instructions to the jury concerning its legal effect, must necessarily have assisted the opposite party.

The next .exception is to the refusal of the Judge to order a nonsuit. But, as it has been repeatedly decided that the courts of the United States have no power to order a peremptory nonsuit, against the will of the plaintiff, it is not necessary to examine the grounds of the motion. Doe *v.* Grymes et al. 1 Pet. 469; D'Wolf *v.* Rabaud et al. 1 Pet. 476; Crane *v.* Morris et al. 6 Pet. 598.

In the course of the trial, the defendants offered to put in evidence two articles contained in Ure's. Dictionary of Arts, Manufactures, and Mines, to prove that the patent declared. on was not valid. The plaintiff objected, and the evidence was excluded. It is incumbent on the defendants to show their right to introduce this evidence. To do so, they rely on the fifteenth section of the act of July 4th, 1836. 5 Stat. at Large, 123. This section enables the defendant, in any action on the case. founded on letters-patent, to give in evidence; under the general issue, any special matter of which notice in writing may have been given to the plaintiff, or his attorney, thirty days before the trial, tending to prove, among other things, that the patentee was not the original and first inventor of the thing patented, or of some substantial and material part thereof claimed as new, or that it had been described in some public work anterior to the supposed discovery thereof by the patentee; and whenever the defendant relies, in his defence, on the fact of a previous invention, knowledge, or use of the thing patented, he is required to state, in his notice of special matter, the names and places of residence of those whom he intends to prove possessed a prior knowledge of the thing, and where the same had been used. The notice given in this case was as follows:

"The patentee was not the original and first inventor or discoverer of a substantial and material part thereof, claimed as new. That it had been described in a public. work, called 'Ure's Dictionary of Arts, Manufactures, and Mines,' anterior to the supposed invention thereof by the patentee; and also. had been in public use and known before that time, and used by Andrew Ure, of London, the late M. Bonnemair, of Paris, and George H. McClary, of Seneca Falls, New York."

Ure's Dictionary contains upwards of thirteen hundred pages,

and the articles which the defendants offered to read were entitled " Thermostad" and " Heat Regulator." The first question is, whether this was a sufficient notice of the special matter, tending to prove that the thing patented, or some substantial part thereof, claimed as new, had been described in a printed publication. We are of opinion it was not. The act does not attempt to prescribe the particulars which such a notice shall contain. It simply requires notice. But the least effect which can be allowed to this requirement, is, that the notice should be so full and particular as reasonably to answer the end in view. This end was not merely to put the patentee on inquiry, but to relieve him from the necessity of making useless inquiries and researches, and enable him to fix with precision upon what is relied on by the defendants, and to prepare himself to meet it at the trial. This highly salutary object should be kept in view, and a corresponding disclosure exacted from the defendant of all those particulars which he must be presumed to know, and which he may safely be required to state, without exposing him to any risk of losing his rights. Less than this would not be reasonable notice, and, therefore, would not be such a notice as the act must be presumed to have intended.

Now, we do not perceive that the defendants would be exposed to the risk of losing any right, by requiring them to indicate, in their notice, what particular things, described in the printed publication, they intended to aver were substantially the same as the thing patented. This they might have done, either by reference to pages, or titles, and perhaps in other ways, for the particular manner in which the things referred to are to be identified, must depend much upon the contents of the volume, and their arrangement. It has been urged that a defendant may not have access to the book in season for the notice. But it must be remembered that, some considerable time before it is necessary to give such a notice, the defendant has begun to use the thing patented, which, *primâ facie*, he has no right to use, and it would seem to be no injustice, or hardship, to expect him, before he begins to infringe, to ascertain that the patentees' title is not valid, and if its invalidity depends on what is in a public work, that he should inform himself what that work contains, and, consequently, how to refer to it. We do not think it necessary so to construe this act, designed for the benefit of patentees, as to enable the defendant to do, what we fear is too often done, to infringe first, and look for defences afterwards.

Nor does a notice, that somewhere, in a volume of thirteen hundred pages, there is something which tends to prove that the thing patented, or some substantial and material part thereof

claimed as new, had been described therein, relieve the patentee from the necessity of making fruitless researches, or enable him to fix with reasonable certainty on what he must encounter at the trial. Upon this ground, therefore, the exception cannot be supported.

But, it is further urged that the book ought to have been admitted as evidence; that Andrew Ure, of London, had a prior knowledge of the thing patented. This view cannot be sustained. For, although the name of Andrew Ure, of London, is contained in the notice of persons who are alleged to have had this prior knowledge, yet the defendants have not brought themselves within the act of Congress, because the notice does not state " where the same was used," by Andrew Ure. Besides, inasmuch as the same section of the statute provides that a prior invention in a foreign country shall not avoid a patent, otherwise valid, unless the foreign invention had been described in a printed publication, the defendants are thrown back upon that clause of the act which provides for that defence, arising from a printed publication, which has already been considered.

The next exception was to the charge of the presiding Judge to the jury. The defendants requested the Judge to charge the jury, 3d, that it was erroneous to consider as constituent parts of the combination claimed by the plaintiff only those points which were requisite to the operation of opening and closing the damper; but that, on the contrary, the jury must consider as constituent parts of the combination all the parts of the machine, as described in the specification, by which the regulation of the heat of a stove, or the other structures, is effected.

4. That the index is a constituent part of the combination patented by the plaintiff.

5. That the detaching process of the lever is a constituent part of the combination patented by the plaintiff.

6. That the pendulum is a constituent part of the combination.

And, in this connection,

7. That if the defendants do not use all the constituent parts of the combination patented by the plaintiff, a verdict must be rendered for the defendants.

As to the 2d, 3d, 4th, 5th, 6th, and 7th of the instructions prayed for by the defendants, the Judge charged the jury, that it was true as insist~'· by the defendants' counsel, that the third article of the summary of the plaintiff's specification, on which alone, if at all, he was entitled to recover, was for a combination; and unless it appeared by the evidence that the defendants had used all the parts of the plaintiff's stove embraced in such combination, he was not entitled to recover. That the

combination claimed in the article in question was of such parts of the mechanism described in the specification as are necessary to regulate the heat of the stove. And unless it appeared by the evidence that some parts of the mechanism, not shown to have been used by the defendants, were necessary to perform that office, or that, according to the just construction of the specification, such parts were intended to be claimed by the plaintiff as a part of such combination, they are not to be considered as embraced within it. That inasmuch as by the fourth article of the plaintiff's summary, he made a distinct and separate claim to what had been called the detaching apparatus, there seemed to be good reason to infer that it was not his intention to claim this in the third article as a part of the combination therein mentioned. But the Judge observed, that the question relative to the extent of the combination, had been treated by the defendants' counsel as a question of fact, and he had no disposition to withdraw it from the consideration of the jury; and he therefore submitted it to the jury to decide, from the evidence, whether the parts of the mechanism described in the specification, which were not shown to have been used by the defendants, were necessary to regulate the heat of the stove; and instructed the jury that if they should so find, the defendants would be entitled to a verdict. And the Judge refused to charge otherwise in relation to such instructions, or any of them.

To this charge and refusal of the Judge, as the 2d, 3d, 4th, 5th, 6th, and 7th of the instructions prayed by the defendants, the defendants' counsel then and there excepted.

The substance of the charge is, that the jury were instructed by the Judge, that the third claim in the specification was for a combination of such parts of the described mechanism as were necessary to regulate the heat of the stove; that the defendants had not infringed the patent, unless they had used all the parts embraced in the plaintiff's combination; and he left it to the jury to find what those parts were, and whether the defendants had used them.

We think this instruction was correct. The objection made to it is, that the court left to the jury what was matter of law. But an examination of this third claim, and of the defendants' prayers for instruction, will show that the Judge left nothing but matter of fact to the jury. The construction of the claim was undoubtedly for the court. The court rightly construed it to be a claim for a combination of such of the described parts as were combined and arranged for the purpose of producing a particular effect, viz., to regulate the heat of a stove. This was in accordance with the defendants' third prayer. But the defendants also desired the Judge to instruct the jury that the

index, the detaching process, and the pendulum, were constituent parts of this combination. How could the Judge know this as matter of law? The claim is in these words : " I also claim the combination, above described, by which the regulation of the heat of the stove, or other structure in which it may be used, is effected." The writing which the Judge was to construe, calls for all such elements of the combination as are actually employed to effect the regulation of the heat, according to the plan of the patentee, described in the specification, and it therefore became a question for the jury, upon the evidence of experts, or an inspection by them of the machines, or upon both, what parts described did in point of fact enter into, and constitute an essential part of this combination. When a claim does not point out and designate the particular elements which compose a combination, but only declares, as it properly may, that the combination is made up of so much of the described machinery as effects a particular result, it is a question of fact which of the described parts are essential to produce that result ; and to this extent, not the construction of the claim, strictly speaking, but the application of the claim, should be left to the jury. The defendants themselves so treat this matter in their third prayer, and we are satisfied the Judge did not err in so treating it.

The defendants' counsel exhibited to the court the models of the machines of the defendants and the plaintiff, for the purpose of satisfying the court the jury must have understood they were at liberty to construe the claim, and that they did in truth so construe it, as to exclude from the combination claimed by the plaintiff, what is called the detaching process. But we can draw no such inference from an examination of those models. And while we do not think it proper to express any opinion on what is really a matter of fact, yet we think it pertinent to say, that an examination of the models has satisfied us that a jury might fairly come to the conclusion that the defendants did use a detaching process, not substantially different from the plaintiff's, and occupying in their combination the same place, and answering substantially the same purpose, as the plaintiff's detaching process does in his combination ; and therefore we can draw no inference such as is contended for.

We have examined all the exceptions, and no one being found tenable, the judgment is affirmed.

Mr. Justice McLEAN dissented.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Northern

District of New York, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged, by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs and interest until the same is paid, at the same rate per annum that similar judgments bear in the courts of the State of New York.