AMERICAN PLUG CO. et al. v. HUDSON MOTOR CAR CO.

District Court, E. D. Michigan, S. D.   May 23, 1927.

No. 1343.

1. Patents ⊙➝328—No. 1,058,210, claims 1-3, for method of finishing castings, held valid and infringed.

Patent No. 1,058,210, claims 1-3, for method of finishing castings, *held* valid and infringed, as against contention that invention was anticipated by prior art and that plaintiffs' disclaimer was illegal.

2. Patents ⊙➝154—Patent disclaimer, making specific that which was indefinite, is valid, in absence of fraud, provided it does not broaden original claim and abandons what was not originally needed (Comp. St. § 9462).

Patent disclaimer, which makes definite and specific what was originally indefinite and general, is valid and proper in absence of fraud, provided it abandons what was not originally needed and does not enlarge original claim but leaves it supported by original specification, in view of Rev. St. § 4917 (Comp. St. § 9462).

In Equity. Patent infringement suit by the American Plug Company and another against the Hudson Motor Car Company. Decree for plaintiffs.

Campbell, Bulkley & Ledyard and Edward N. Pagelsen, all of Detroit, Mich., and Rector, Hibben, Davis & Macauley, of Chicago, Ill., for plaintiffs.

Beaumont, Smith & Harris, of Detroit, Mich., and Macleod, Calver, Copeland & Dike, of Boston, Mass., for defendant.

TUTTLE, District Judge. [1] This suit is brought on patent No. 1,058,210, granted April 8, 1913, to Allie Ray Welch and Fred Stimson Welch, for a novel "method of finishing castings," and transferred by mesne assignment to American Plug Company, and under which M. D. Hubbard Spring Company is the exclusive licensee.

The invention set forth in the patent involves the closing of holes which are left in hollow castings to permit the removal of the sand which constitutes the cores which produce the chambers or voids in such castings, of which the water chambers in the cylinder blocks and heads of automobile engines are familiar examples. These holes were formerly bored and tapped or screw-threaded, and threaded plugs screwed into them to close them.

The invention consists in a novel process for closing such holes, and comprises the counterboring of the hole for a portion of its depth to form a circumferential shoul-

der within the hole between the outer and inner faces of the casting, forming a dome-shaped or concavo-convex circular metal plug, placing the plug within the enlarged portion of the hole so that its edge rests on the shoulder therein and so that the plug is convex outwardly in the hole, and then flattening the plug within the hole to expand it sufficiently to cause its edge to so strongly engage the wall of the hole that it cannot be removed by ordinary pressures. The plug shown in the patent will be hereinafter termed the "Welch" plug, and the M. D. Hubbard Spring Company, plaintiff herein, the "Hubbard Company."

Prof. Sawdon, defendant's expert, testified that such plugs have resisted pressures up to 1,000 pounds per square inch when expanded in cylindrical holes. The pressure required to remove a plug depends upon the expansion of the plug when being flattened in the hole wherein it is seated, and the invention may therefore be used to protect hollow bodies from being destroyed by liquid pressure within them by simply determining in advance the dimensions and expansion of such plugs and the pressure necessary to remove them.

The Welch plugs were placed on the market in 1913, and were so favorably received that more than 14,000,000 were sold in 1919, and about 130,000,000 were sold by the Hubbard Company up to the 1st of May, 1926. There seems to have been no infringement of this patent until this defendant began the use of similar plugs supplied by other manufacturers.

Testimony shows that the cost of one-inch threaded plugs was $18.80 per thousand and was $9.18 per thousand for Welch plugs which could be substituted for these threaded plugs. The average time allowed for inserting Welch plugs of this size was .35 minutes per plug, which included positioning the casting, preparing the hole, inserting and driving the plug, and moving the casting to one side. The average time allowed for inserting screw plugs was 2.45 minutes per plug, which also covered all the steps. These figures are taken from the time cost sheets of the Wilson Foundry & Machine Company of Pontiac, Mich., which employs as high as 4,000 men, and show the commercial advantage of the invention disclosed in the patent in suit.

Defendant admitted that it purchased plugs of the character marked "Defendant's Exhibits A and B," attached to the answers to interrogatories filed by plaintiffs, from Brewer-Titchener Corporation and Reed & Prince Corporation, "that these discs were inserted in cylindrical holes by the defendant to rest against shoulders at the bottoms of said holes, and the discs were flattened against the shoulders to enlarge the discs sufficiently to hold them in place without other holding means."

As these exhibits are identical with the Welch plugs made by the Hubbard Company and described by the patent in suit, there can be no question as to the infringement if the patent is valid. Defendant claims the patent is invalid, because the invention therein is anticipated by the prior art and because the disclaimer filed by the plaintiffs is illegal.

Defendant offered a large number of patents in evidence but confined itself to the patents to: Holmes, No. 256,567, April 18, 1882; Mann, No. 532,978, January 22, 1895; Phillips, No. 625,197, May 16, 1899; Penfold, No. 801,683, October 10, 1905; Towne, No. 879,694, February 18, 1908; Towne, No. 879,695, February 18, 1908; Jenkins, No. 970,926, September 20, 1910.

The Holmes patent, No. 256,567, discloses the idea of forming a circular depression in a wooden head or stave of a barrel over and around a knot, then inserting a domed disc which substantially fits the depression, and then flattening the disc. The only material mentioned is tin plate, and, when such a disc is flattened, its edge will be pushed into the wall of the depression and the disc will be held in place by the wood that projects over the edge thereof. This method of preventing leakage around knots in wooden casks would offer no suggestion for the use of a convex plug in the cylindrical counterbore of a hole in a hollow casting.

The Mann patent, No. 532,978, shows glass bottles and discs of lead or other malleable or ductile material seated in the necks thereof. One of the five views shows a cylindrical recess in the outer end of the neck of the bottle, and Fig. 6 shows a disc which is adapted to be placed within such recess and caused to form a tight joint by the lateral displacement of its periphery by pressure applied to the surface at or near the margin of the disc. The sealing of a bottle by means of a lead disc does not suggest the patent in suit.

The Phillips patent, No. 625,197, shows the well-known paper disc employed for closing milk bottles.

The Penfold patent, No. 801,683, shows a cylindrical sheet metal stopper for a sheet

metal container and an expandable disc adapted to be forced down into this cylindrical stopper in order to expand its inner end within this sheet metal container. This forms a groove in the wall of the container and a circumferential rib on the stopper extending into this groove.

The Jenkins patent, No. 970,926, shows a cylindrical paper receptacle and paper discs for closing the end thereof; these discs being glued together.

These five patents are all in nonanalogous arts, and do not anticipate the invention of the patent in suit. There is no testimony that any of these structures have been put into practical use, and a cooperage expert produced by defendant stated that he had never heard of the use of the device shown by the Holmes patent.

The Towne patent, No. 879,694, is on a well-known "Yale" padlock, the body of which is in the form of a ring; the opening being surrounded at each side of the body by an undercut or grooved circular shoulder adapted to receive the edge of a convex face plate or cover which is spread by flattening to cause its outer edge to enter the undercut or groove so that it will be permanently locked in place by means of the shoulder which is produced by this undercutting. A number of these locks were produced in evidence, and it was shown that in each case the joint between the disc or plate and the body of the lock was not watertight. As was explained by Dean Cooley, the expert witness for the plaintiffs, this could not be otherwise, as the metal of these plates is necessarily somewhat resilient, and when these discs are expanded into place, they must spring back an appreciable amount so that leakage must occur. No attempt was made by witnesses who were connected with the manufacture of these locks to show that such joints had been made watertight, and an attempt by an official of the Yale & Towne Lock Company to cause a disc or plate to fit watertight resulted in the lock being ruined.

Testimony was offered by defendant to show that lock bodies had been formed with cylindrical counterbores and that discs had been forced into these counterbores by flattening them, but, on cross-examination, it developed that this experiment was quickly abandoned because these discs dropped out while the locks were being transported within the factory.

The second patent to Towne, No. 879,695, shows a similar lock formed with counter-bores to receive the closures, the walls of the counterbores being formed with grooves to receive spring locking rings. Counsel for defendant contended that the statement in lines 69 to 79 of page 1 of this patent suggests that these closures may be flattened and secured in position by such flattening, but careful study of these lines shows the intent of the inventor to be the insertion of the locking rings before the introduction of the closure plates and the flattening of the closure plates to cause them to enlarge and their outer edges to extend between the locking rings and the shoulders, so that the closures may be secured in place by these locking rings. The entire context shows that Towne relied upon the locking rings to secure his closures in position.

I therefore find that the prior art does not anticipate the invention of the patent in suit.

The second defense attacks the validity of the patent on the ground that a disclaimer therein filed November 10, 1925, is illegal as not being warranted by the disclosure of the original patent. Defendant states in its brief: "There is nothing whatever in the specification of the patent as originally issued which suggests—much less states unequivocally—that the Welch invention consisted in closing a cylindrical hole by means of a concavo-convex disc." Fig. 4 of the drawing of this patent shows a casting $A$ having a hole $B$ therethrough, which has a counterbore $C$ to form a shoulder $D$. Fig. 2 shows a circular disc 2, which the specification states is shown in cross-section in Fig. 3. Fig. 3 shows the disc to be concavo-convex. Fig. 5 shows the concavo-convex disc of Fig. 3 seated within the counterbore and resting on the shoulder $D$. Line 38 of the patent states that this disc has "a circular shape and is of the diameter of the larger portion $C$ of the hole $B$. This disc is concaved, as indicated in Fig. 3." The disclosure, therefore, of this patent is that the invention consisted in closing a cylindrical hole by means of a concavo-convex disc. The patent states (page 1, line 44): "Then by a blow of a hammer, or otherwise, flatten the disc down, as represented in Fig. 6, thus expanding the same in diameter and binding it firmly against the wall of the enlargement $C$ of the hole $B$, thus effectively closing the hole."

The three claims which plaintiffs contend are infringed were originally as follows:

"1. The process of closing holes in cast-

ings, consisting in shaping the hole so as to permit a piece of suitable material to enter the outer end thereof and to prevent said piece from passing through the hole, and then expanding the piece to bind it in the hole.

"2. The process of closing a hole in a casting, consisting in enlarging the outer end of said hole so as to form a shoulder placing a piece of suitable material on said shoulder and expanding said piece by pressing the same against said shoulder.

"3. The process of closing a hole in a casting, consisting in enlarging the outer end of said hole so as to form a shoulder, placing a concave disc on said shoulder and flattening said disc to force it against the walls of said opening and bind it in place."

After these claims had been considered by the attorneys for the plaintiffs in connection with the prior art, a disclaimer was filed, which is as follows:

"1,058,210—Allie Ray Welch and Fred Stimson Welch, Pontiac, Mich. Method of Finishing Castings. Patent dated April 8, 1913. Disclaimer filed October 19, 1925, by the assignee, American Plug Company.

"Hereby enters this disclaimer to restrict and limit the terms of the specification and claims.

"And your petitioner hereby disclaims from the process covered by said patent, any process which embodies as a step the forming of an undercut shoulder to extend over the edge of the disc to hold it in position after it has been spread on the shoulder, such as shown and described by United States letters patent to H. R. Towne, No. 879,694, granted February 18, 1908, and limits the process to closing a hole in a casting by enlarging the outer end of the hole so as to form a shoulder between said outer end and the inner end, the enlarged end of the hole being cylindrical and of no greater diameter immediately adjacent the shoulder than at any point more remote therefrom, placing a concaved disc having a substantially cylindrical edge of said shoulder and flattening said disc so as to force its edge against the cylindrical wall of said enlarged portion of the hole with sufficient pressure to firmly hold the disc in position by reason of the fit of the disc in said hole.

"And your petitioner hereby limits and confines the claims of said letters patent to a process as described therein in which the enlarged portion of the hole is of minimum diameter adjacent the shoulder and the disc is held in position by its pressure and fit against the wall of the enlarged portion of the hole adjacent the shoulder.

"(Official Gazette, November 10, 1925.)"

Section 4917, Revised Statutes (Comp. St. § 9462), is as follows:

"Whenever, through inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, a patentee has claimed more than that of which he was the original or first inventor or discoverer, his patent shall be valid for all that part which is truly and justly his own, provided the same is a material or substantial part of the thing patented; and any such patentee, his heirs or assigns, whether of the whole or any sectional interest therein, may, on payment of the fee required by law, make disclaimer of such parts of the thing patented as he shall not choose to claim or to hold by virtue of the patent or assignment, stating therein the extent of his interest in such patent. Such disclaimer shall be in writing, attested by one or more witnesses, and recorded in the Patent Office; and it shall thereafter be considered as part of the original specification to the extent of the interest possessed by the claimant and by those claiming under him after the record thereof. But no such disclaimer shall affect any action pending at the time of its being filed, except so far as may relate to the question of unreasonable neglect or delay in filing it."

This permits a patentee whose attorney (in an attempt to fully conserve the rights of his client) has drawn broad claims which not only cover the patentee's invention but also cover structures which anticipated the patentee's date of conception, to formally restrict his claims of invention. His new and restricted claims must be of such a nature that they could have been rightfully a part of the original application. As stated by Judge Hough in Marconi Wireless T. Co. v. De Forest Radio T. & T. Co. (C. C. A.) 243 F. 560: "The mistake (if there was one) was in claiming something not needed, and the disclaimer abandoned what was not wanted, without broadening or enlarging any claim; it also left the claims fully supported by the original specification."

Plaintiffs' disclaimer is fully within the rule. It specifically limits the claims in suit to a process which comprises the forming of a cylindrical counterbore, and with abundant caution points out that "a process which embodies as a step the forming of an undercut shoulder to extend over the edge of the disc to hold it in position after it has

been spread on the shoulder, such as shown and described by United States letters patent to H. R. Towne, No. 879,694," is expressly excluded from the scope of the claims under this disclaimer.

[2] This disclaimer limits the scope of the claims to precisely what is shown by the drawings of the patent in suit and set forth in the specification. No limitations have been imported upon these claims from an ambiguous specification into an unambiguous claim for the sake of saving the validity of the patent, and this disclaimer therefore comes clearly within the rule laid down in the Permutit Case (C. C. A.) 13 F.(2d) 454:

"Limitations upon a claim may not be imported from an ambiguous specification into an unambiguous claim for the sake of saving the validity of a patent (McCarty v. Lehigh, 160 U. S. 110, 116, 16 S. Ct. 240, 40 L. Ed. 358); but, where the specification clearly shows that the inventor contemplated the limitation, and where the language of the claim is not clear to the contrary, it may be so construed by reference to the specification that the patent may prevail (Lamb v. Lamb [C. C. A. 6] 120 F. 267, 269, 56 C. C. A. 547); and the fact that the claim does not say, 'substantially as described,' is not controlling (National [Tube] Co. v. Mark [C. C. A. 6], 216 F. 517, 515, 133 C. C. A. 13)."

This same rule is either set forth or approved in: Silsby v. Foote, 14 How. 219, 14 L. Ed. 394; Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566; Roemer v. Neumann (C. C.) 26 F. 102; Electrical Accumulator v. Julien (C. C.) 38 F. 117; Albany v. Worthington (C. C. A.) 79 F. 966; Thompson v. Bushnell (C. C. A.) 96 F. 238; Page v. Dow (C. C.) 200 F. 72; Marconi v. De Forest (C. C. A.) 243 F. 560; Permutit v. Harvey (C. C. A.) 279 F. 713; Seiberling v. Thropp's Sons Co. (C. C. A.) 284 F. 746; Campbell Metal Window Corp. v. Pomeroy (D. C.) 300 F. 872; Manhattan v. Helios Co. (C. C.) 135 F. 785.

A patent disclaimer, which makes definite and specific what was previously indefinite and general, is valid and proper, provided that such disclaimer abandons what was not originally needed and does not broaden or enlarge the original claim and leaves said claim supported by the original specification, and provided also that there is no fraud in connection with such disclaimer.

The patent in suit is valid, and claims 1, 2, and 3 thereof are infringed by the defendant.