Edward T. MOLINARO, Anthony P. Catanzaro, Plaintiffs,

v.

HART ELECTRONICS CORP. OF SCRANTON, Defendant.

Civ. A. No. 72–250.

United States District Court, M. D. Pennsylvania.

May 28, 1981.

Edward T. Molinaro, pro se.

Anthony P. Catanzaro, pro se.

Andrew Hailstone, Henkelman, Kreder, O'Connell & Brooks, Scranton, Pa. and John C. McNett, Woodard, Weikart, Emhardt & Naughton, Indianapolis, Ind., for defendant.

## OPINION

STAPLETON, District Judge:

The complaint in this patent infringement action alleged that the defendant has infringed U.S. Patent No. 2,906,875 by using and selling radio signal seeking receivers manufactured by a number of different firms. The infringement claims with respect to all accused devices other than those of Regency Electronics Co. ("Regency") and Unimetrics, Inc. ("Unimetrics") have heretofore been adjudicated. The Regency and Unimetrics claims are set for trial on June 1 and 2, 1981.

At the pre-trial conference held on May 12, 1981, plaintiffs indicated that they intended to introduce evidence only with respect to one Regency receiver and one Unimetrics receiver. Plaintiff Molinaro produced literature describing the Unimetrics device and plaintiff Catanzaro agreed to produce similar material on the Regency device in three days. Both descriptions have now been made a part of the record.

In response to questioning by the Court at the pre-trial conference, the plaintiffs candidly admitted that both signal seeking receivers were "termination of signal" receivers—i. e. receivers which stop their scan in response to a received signal and automatically resume their scan only after the received signal has terminated. (Tr. 22–26). Thus, the Unimetric literature describes the operation of its receiver as follows:

> ... In the automatic scanning mode, the receiver will continuously scan up to 8 channels in the selected band, locking onto the first channel on which a voice transmission is received. Upon the cessation of the transmission, automatic scanning will resume until another transmission is received on one of the channels. ...

Similarly the Regency literature states that the Regency receiver "locks on and listens to the action . . . and resumes signal search at the end of each transmission . . . automatically."

Claim 3 of the patent-in-suit, the claim alleged to have been infringed by these receivers, reads as follows:

In a signal seeking receiver, power-operated means for tuning said receiver successively to signals within a frequency range of operation, means responsive to a received signal for temporarily stopping the operation of said tuning means during a predetermined short time interval whereby the tuning of the receiver proceeds automatically from signal-to-signal but stops for a short interval on each signal to permit the user to decide whether he desires that signal, and means operable by the user for interrupting the automatic signal-to-signal tuning whenever the user desires that the receiver shall remain tuned to a signal then being received.

■ In *Catanzaro v. Masco Corp.*, 423 F.Supp. 415, 415–16, 429–37 (D.Del.1976) I held, for a number of reasons there articulated, what I believe to be obvious simply from reading Claim 3: Claim 3 cannot be read to extend to devices which automatically resume their scan, not after a predetermined time interval, but rather after a period of time defined by the length of the transmission being received. The Court of Appeals for the Third Circuit affirmed this holding (575 F.2d 1085, May 1, 1978), and, accordingly, in this Circuit, as a matter of law, the patent-in-suit cannot be read to extend to termination of signal receivers like those accused in this case.

When the identity of the accused devices and their mode of operation were finally established on the record at the pre-trial conference, I indicated that I intended to reconsider defendant's motion for summary judgment and invited any supplemental materials anyone wished to file. Having reviewed the submissions, I conclude that a summary judgment of non-infringement should be entered for the defendant. Accordingly, there will be no trial.

Too much has already been written about this matter and I will be brief. Given the Third Circuit's decision in the *Masco* case, I would have no choice at trial but to instruct the jury that, as a matter of law, the accused devices do not infringe the patent-in-suit.[1] I would also have to instruct the jury that Mr. Catanzaro (and perhaps Mr. Molinaro)[2] is collaterally estopped to contend that the accused devices infringe the patent-in-suit.

■ Plaintiffs argue, among other things, that Figure 2 of the patent-in-suit shows a circuit diagram of a receiver which can operate as a termination of signal device. They emphasize that counsel for one of the defendants in the *Masco* case conceded this fact in a letter to the Court. The scope of a patent is defined, however, not by the figures in the specifications, but by its claims. As previously noted, those claims simply cannot be read to include termination of signal devices.

Plaintiffs also contend that summary judgment is inappropriate. The situation here, however, is the same as that in the *Masco* case where a summary judgment of non-infringement was affirmed. Unlike *Silsby v. Foote*, 55 U.S. (14 How.) 218, 14 L.Ed. 394 (1852) relied upon by plaintiffs, there is no disputed issue of fact here which could be submitted to a jury.

Plaintiff Catanzaro urges two additional arguments: (1) that he did not have a full and fair opportunity to litigate the *Masco* case and (2) that termination of signal devices were part of the prior art.

---

1. The fact that Mr. Molinaro was not a party to the *Masco* case would, of course, have no bearing on this conclusion. The law announced in that case is the same for party and stranger alike.

2. Mr. Molinaro here contends that his undertaking to be bound by the *Masco* decision was limited to the defendants in that case. As indicated in the preceding footnote, it is unnecessary for me to reach that issue.

The dispositive issue in the *Masco* case was a narrow issue of law. Mr. Catanzaro had a full and fair opportunity to express his views on that issue and he lost. This finding is not necessary to the result here reached, however, because the defendant would be entitled to summary judgment even if Mr. Catanzaro were not collaterally estopped.

■ Mr. Catanzaro's prior art argument is difficult to follow. It appears to be that a prior art patent, the *Lowell* patent, fully disclosed a termination of signal device, that the patent-in-suit is an improvement on that disclosure, and that all prior art is subsumed by implication in the patent-in-suit. Suffice it to say that the patent-in-suit claims a "signal sampling" receiver that pauses for a predetermined period of time; it does not claim an improvement on a termination of signal device from the prior art and, if it did, it would not be infringed by a device that utilized the prior art without the improvement.

■ Finally, I note that plaintiff Catanzaro has again moved under 28 U.S.C. § 144 for my recusal. Accepting all matters of fact stated by Mr. Catanzaro to be true, there is no ground for recusal and I decline to recuse myself. In summary, Mr. Catanzaro argues that I should recuse myself because (1) I reached the wrong result in the *Masco* case, (2) I improperly decided the *Masco* case on summary judgment, (3) I failed to mention Figure 2 in my *Masco* opinion, (4) I failed to follow the law of the case in *Masco* as embodied in a discovery ruling of Magistrate (now Judge) Goettel during the multi-district phase of the case, and (5) I applied principles of law in the *Masco* case which Mr. Catanzaro perceives to be different from the principles I have applied in other cases. In short, Mr. Catanzaro simply disagrees with the conclusions of law which I reached in the *Masco* case. This does not warrant recusal.[3]

**3.** Mr. Molinaro also believes that I committed several "gross" errors in the *Masco* case and has filed a petition "to convene an evidentiary hearing or in the alternative a separate trial to correct the errors of fact that have existed since Masco." This Court has no jurisdiction to correct anything in the *Masco* case and, in this case, there are no material facts in dispute.